**RHINO ASSOCIATES, L.P., Plaintiff,**

v.

**BERG MANUFACTURING AND SALES CORPORATION and Cencor Plastics, Inc., Defendants.**

Civil Action No. 1:04–CV–1611.

United States District Court,
M.D. Pennsylvania.

Nov. 14, 2007.

David R. Fairbairn, Kinney & Lange, Minneapolis, MN, Mary P. Patterson, Robert J. Tribeck, Rhoads & Sinon LLP, Harrisburg, PA, for Plaintiff.

## MEMORANDUM

CONNER, District Judge.

Presently before the court is the motion (Doc. 142) of plaintiff Rhino Associates, L.P. ("Rhino") for default judgment against defendant Berg Manufacturing and Sales Corporation ("Berg").[1] For the reasons that follow, the motion will be granted in part and denied in part.

---

1. Rhino previously filed a motion for default judgment. (*See* Doc. 136.) The court will deny the motion as moot. This ruling is without prejudice to Rhino's right to file a motion for default judgment against defendant Cencor Plastics, Inc.

## I. *Background*

Rhino commenced the instant action on July 22, 2004 alleging willful patent infringement against Berg. (*See* Doc. 1.) Berg answered the complaint on August 25, 2004 and filed a counterclaim against Rhino asserting that the patent at issue (patent no. Re. 34,889, hereinafter "the '889 patent") was invalid and unenforceable. (Doc. 7.)

On June 16, 2005, Berg's counsel filed a motion to withdraw contending that Berg owed over $100,000 for services rendered and that Berg was "judgment proof" as it had transferred all of its assets to another party. (Doc. 25.) The memorandum and order of court dated June 24, 2005 (Doc. 35) directed counsel to confer with Berg regarding the ramifications of being unrepresented, that is, the likely entry of default judgment against Berg. On July 1, 2005 after a telephone conference hearing, the court granted Rhino's motion for a temporary restraining order. (Doc. 44.) Despite the likely entry of default judgment, the temporary restraining order against it, and Rhino's motions for summary judgment (Docs.26, 27, 28) and for a preliminary injunction (Doc. 42),[2] Berg consented to the withdrawal of its counsel (*see* Doc. 45). The order of court dated July 12, 2005 (Doc. 46) granted counsel's motion to withdraw and directed Berg to secure representation or face the entry of default judgment against it.

On July 25, 2005, Berg secured new counsel and subsequently opposed Rhino's motions for summary judgment. (*See* Docs. 49–52, 74–79.) Berg also participated, through counsel, in the hearing on claim construction and the motions for summary judgment. (*See* Docs. 84, 91.) In July and August, 2006, counsel for Berg moved to withdraw (Docs.117, 120), contending that Berg owed over $50,000 for services rendered and had failed to make payment for over a year (Doc. 130).[3] The court directed Berg to show cause why the motions to withdraw should not be granted. (*See* Docs. 119, 132.) Berg did not respond to the court's directive and the order of court dated May 1, 2007 (Doc. 134) granted counsel's motions to withdraw.

On May 11, 2007, Rhino filed its initial motion for default judgment (Doc. 136). The order of court dated May 14, 2007 (Doc. 137) directed Berg to secure the appearance of counsel and show cause why default judgment should not be entered against it by May 25, 2007. Rhino subsequently filed the instant motion for default judgment (Doc. 142) and supporting documents (Docs.145, 150), requesting damages of $1,364,160.00 and attorney's fees and costs of $488,392.28.[4] The order of court dated September 11, 2007 (Doc. 147) permitted Berg to respond to Rhino's requested damages, attorney's fees, and costs. As of the date of this memorandum, Berg has not secured representation, shown cause why default judgment should not be entered against it, responded to Rhino's requested damages, attorney's fees, and costs, or otherwise communicated with the court.

---

**2.** The order of court dated July 15, 2007 (Doc. 48) granted Rhino's motion for a preliminary injunction. Berg's subsequent motion to dissolve the preliminary injunction (Doc. 66) was denied by the order of court dated January 13, 2006 (Doc. 87). The order also directed Rhino to post a bond or appropriate security in the amount of $75,000. *See* FED. R. CIV. P. 65(c).

**3.** The court deferred ruling on the motions to withdraw pending resolution of claim construction and the motions for summary judgment. (*See* Doc. 122.)

**4.** *See supra* note 1.

## II. *Discussion*

An entry of default under Rule 55(a) of the Federal Rules of Civil Procedure must precede an entry of default judgment under Rule 55(b)(2). *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 Fed.Appx. 519, 521 n. 1 (3d Cir. 2006). An entry of default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." FED. R. CIV. P. 55(a).[5]

 In the matter *sub judice*, the court finds that the entry of default against Berg is warranted. As a corporation, Berg must be represented in court by counsel. *See Simbraw, Inc. v. United States*, 367 F.2d 373, 373 (3d Cir.1966) (per curiam) (holding that "a corporation [must], to litigate its rights in a court of law, employ an attorney at law to appear for it and represent it in the court"), *cited with approval in Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 203, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993). The order of court dated May 1, 2007 (Doc. 134) granted the motions to withdraw by counsel for Berg.[6] To date, Berg has not secured representation or otherwise communicated with the court despite the order of court dated May 14, 2007 (Doc. 137) which directed Berg to secure the appearance of counsel and show cause why default judgment should not be entered against it and the order of court dated September 11, 2007 (Doc. 147) which permitted Berg to respond to Rhino's claims for damages, attorney's fees, and costs. Although Berg filed an answer in this action (*see* Docs. 7, 107), the entry of default against Berg is nonetheless appropriate for Berg's failure to "otherwise defend" itself. *See* FED. R. CIV. P. 55(a); *see also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 918 (3d Cir.1992) ("The failure to plead is no greater an impediment to the orderly progress of a case than is the failure to appear at trial or meet other required time schedules, and we see no reason why the former would be subject to a sanction [under Rule 55] not equally applicable to the latter.."); *id.* at 918–19 ("[T]he district court in this case could have imposed a default judgment against the defendants for failure to comply with its own unambiguous orders to obtain substitute counsel, file a pretrial memorandum, and respond to the plaintiffs' discovery requests.").

 Having concluded that default against Berg is warranted, the court turns to the issue of default judgment. *See* FED. R. CIV. P. 55(b)(2). In accordance with the notice requirement of Rule 55(b)(2), the

---

5. *See Sys. Indus., Inc. v. Han*, 105 F.R.D. 72, 74 n. 1 (E.D.Pa.1985) ("Although Rule 55(a) speaks of entry of a default by the clerk, the court has the power to perform this task as well."); *see also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917–19 (3d Cir. 1992).

6. When counsel for a corporation seeks to withdraw, a district court must consider the "ordinary rules of withdrawal" and determine whether the attorney's continued representation of the corporate client serves a "meaningful purpose." *Buschmeier v. G&G Invs., Inc.*, 222 Fed.Appx. 160, 164 (3d Cir. 2007). The court permitted counsel to withdraw because Berg failed, for over a year, to pay for services rendered and counsel's continued representation served "no meaningful purpose." *Id.* The ordinary rules of withdrawal favored withdrawal based on Berg's failure to pay and the subsequent financial burden on counsel. *See* PA. RULES PROF'L CONDUCT R. 1.16(b)(5)-(6); *see also* L.R. 83.23.2 (adopting Pennsylvania Rules of Professional Conduct). Moreover, the risk of prejudice to Berg was minimal because Berg was aware of the consequences of counsel's withdrawal, yet refused to communicate with counsel or the court. Such refusal evinced Berg's unwillingness to defend itself in these proceedings.

order of court dated May 14, 2007 (Doc. 137) directed Rhino to serve a copy of the motion for default judgment on Berg. *See* FED. R. CIV. P. 55(b)(2) ("If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."). The following day, Rhino served Berg with its motion for default judgment, its proposed order, and the order of court which directed Berg to secure the appearance of counsel and show cause why default judgment should not be entered against it. (*See* Doc. 138.) In an abundance of caution, the court again permitted Berg to respond to Rhino's requested damages, attorney's fees, and costs. (*See* Doc. 147.) Given the evidence on damages and fees submitted by Rhino (*see* Doc. 145, Exs. 2–3; Doc. 150), which remains unopposed by Berg, the court finds that a hearing on damages is not required. *See* 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 2007) ("Rule 55 does not require that testimony be presented as a prerequisite to the entry of a default judgment, and thus several courts have determined that a hearing is not required before entering a default."). Therefore, the court will address Rhino's request for injunctive relief, damages, and attorney's fees and costs.

### A. *Injunctive Relief*

 Section 283 of the Patent Act provides that the court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent." 35 U.S.C. § 283. Without a trial on the merits, Rhino has not proved that Berg's ramp infringes the '889 patent. However, "a consequence of the entry of default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.' " *Whelan v. A. Ward Enters., Inc.,* No. 01–2874, 2002 WL 1745614, at *2 (E.D.Pa. July 23, 2002) (quoting *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir.1990)). Therefore, the allegation of infringement is taken as true for the purpose of the instant motion only and the court will issue a permanent injunction. *See id.*

### B. *Damages*

 Section 284 of the Patent Act provides: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. In the matter *sub judice,* the undisputed evidence of record reveals that Berg sold at least 90,948 sets of infringing ramps from January 1, 2004 through May 25, 2005. (Doc. 145, Ex. 3.) Rhino seeks a reasonable royalty of $5.00 per set of infringing ramps sold by Berg.

 A reasonable royalty is the amount "a prudent licensee ... would have been willing to pay ... and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license." *Sightsound.com, Inc. v. N2K, Inc.,* 391 F.Supp.2d 321, 355 (W.D.Pa.2003) (citation omitted); *see also id.* at 355 n. 30 (setting forth other factors to consider in determining a reasonable royalty). The court finds that $5.00 is a reasonable royalty. Rhino entered into an exclusive license agreement with Blitz, Inc. ("Blitz") regarding the '889 patent. (Doc. 150, Ex. 5 ¶ 4.) Blitz sold the ramps to customers for $20.00 per set and instructed Rhino that it would require a $5.00 royalty to waive its exclusive rights. (*Id.* ¶¶ 9, 12.) During the relevant time period, Berg sold

the infringing ramps at more than $5.00 below Blitz's $20.00 price. (Doc. 145, Ex. 3; Doc. 150, Ex. 5 ¶ 10.) In other words, Berg could have passed a $5.00 royalty on to its customers and still been able to undersell Blitz. Therefore, the court finds that $5.00 per set is a reasonable royalty in the instant matter. With 90,948 infringing ramps sold, this royalty amounts to $454,740 in damages and the court will grant the instant motion with respect to these damages.

▄▄▄▄ The court's analysis of damages does not end here. Rhino seeks enhanced damages, arguing that Berg willfully infringed the '889 patent. Section 284 of the Patent Act allows the court to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Such an award is punitive in nature and "depends on a showing of willful infringement or other indicium of bad faith warranting punitive damages." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed.Cir.1996). To determine whether an infringement is willful or in bad faith, the court must look at the totality of the circumstances. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1225 (Fed.Cir.2006). The United States Court of Appeals for the Federal Circuit recently set forth the standard for determining whether enhanced damages for willful infringement under § 284 are warranted:

> [We] hold that proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness. Because we abandon the affirmative duty of due care, we also reemphasize that there is no affirmative obligation to obtain opinion of counsel.

We fully recognize that "the term [reckless] is not self-defining." However, "[t]he civil law generally calls a person reckless who acts ... in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." Accordingly, to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer.

*In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed.Cir.2007) (citations omitted).

In the matter *sub judice,* the court finds that Berg did not willfully infringe the '889 patent. The evidence submitted by the parties at the summary judgment stage reveals that Joel Berg ("Joel") saw Rhino's ramp and believed that Berg could design it better. (*See* Doc. 30, Ex. B at 47.) Joel read the '889 patent and attempted to design around it when he created a ramp with three individual components, two of which—the platform and incline components—are "self-locking" with a dowel and pin structure.[7] (*See* Doc. 30, Ex. B at 47, 65, 69, 89–90.) The '889 patent discloses a ramp that, once constructed, is "essentially one piece."[8] (*See* Doc. 1, Ex. A.) Given the attempt to design around the "essentially one piece" requirement in the '889

---

7. A prototype of the Berg ramp was created by cutting a Rhino ramp in half, adding a dowel and pin structure between the two pieces, and adding a wood mat. (*See* Doc. 30, Ex. B at 50.)

8. The memorandum and order of court dated March 29, 2007 construed the phrase "a structure that is essentially one piece" in the '889 patent as "a structure that is basically, fundamentally, substantially, or virtually a single piece after being constructed or assembled." (Doc. 127 at 19.)

patent, the court finds that Berg did not act with "an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC,* 497 F.3d at 1371; *see also Westvaco Corp. v. Int'l Paper Co.,* 991 F.2d 735, 745 (Fed. Cir.1993) ("One of the benefits of a patent system is its so-called 'negative incentive' to 'design around' a competitor's products, even when they are patented, thus bringing a steady flow of innovations to the marketplace. It should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them." (quoting *State Indus., Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1235–36 (Fed.Cir.1985))). Therefore, Rhino has not demonstrated objective recklessness by Berg and enhanced damages are not warranted. Accordingly, the court will deny the instant motion with respect to Rhino's request for enhanced damages.

### C. Attorney's Fees and Costs

 Section 285 of the Patent Act provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case is a case "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378, 1381 (Fed.Cir.2005). In the matter *sub judice,* Rhino requests attorney's fees and costs for Berg's willful infringement. (*See* Doc. 145 at 12.) As discussed *supra,* the court finds that Berg did not willfully infringe the '889 patent. Therefore, the court will deny Rhino's request for attorney's fees and costs.

### D. Other Relief

 Rhino also seeks a modification of the protective order dated September 23, 2004 (Doc. 12) to allow Rhino to use confidential information obtained during the instant action in any subsequent action involving the '889 patent. (*See* Doc. 145 at 13–14.) Berg does not dispute Rhino's contention that Berg is out of business [9] or that Rhino will be unable to retrieve information from Berg in the future. Therefore, the court will modify the protective order to allow Rhino to use confidential information obtained from Berg during the instant action in any subsequent action involving the '889 patent *and* Berg's ramps.

### III. Conclusion

For the foregoing reasons, the motion for default judgment against Berg will be granted in part and denied in part. An appropriate order will issue.

### ORDER

AND NOW, this 14th day of November, 2007, upon consideration of plaintiff's motions (Docs.136, 142) for default judgment against defendant Berg Manufacturing and Sales Corporation, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for default judgment (Doc. 142) is GRANTED in part and DENIED in part as follows:

 a. The Clerk of Court is directed to enter DEFAULT against defendant Berg Manufacturing and Sales Corporation. *See* FED. R. CIV. P. 55(a).

 b. The Clerk of Court is directed to enter JUDGMENT in favor of plaintiff and against defendant Berg

---

**9.** Defendant Cencor Plastics, Inc. purchased all right, title, and interest in the assets of Berg. (*See* Doc. 102 ¶ 22; Doc. 105 ¶ 22.)

Manufacturing and Sales Corporation in the amount of $454,740.00.

c. Defendant Berg Manufacturing and Sales Corporation, its officers, its agents, its servants, its employees, its attorneys, and those persons in active concert or participation with defendant who receive actual notice of this order and judgment by personal service or otherwise are permanently ENJOINED from:

i. Making, using, offering to sell, or selling within the United States or importing into the United States the products identified as "Berg Product 23404" and "Berg Product 23405," also known as "Autoramp Poly Plus"; and

ii. Actively inducing others to make, use, offer to sell, or sell within the United States or to import into the United States the products identified as "Berg Product 23404" and "Berg Product 23405," also known as "Autoramp Poly Plus."

d. The Clerk of Court is directed to RETURN to plaintiff the $75,000 security bond posted (Doc. 88).

e. The protective order dated September 23, 2004 (Doc. 12) is MODIFIED to allow plaintiff to use confidential information obtained from defendant Berg Manufacturing and Sales Corporation during the instant action in any subsequent action involving the '889 patent *and* Berg's ramps.

f. The motion for default judgment (Doc. 142) is otherwise DENIED.

2. The motion for default judgment (Doc. 136) is DENIED as moot without prejudice to plaintiff's right to file a motion for default judgment against defendant Cencor Plastics, Inc.