816 F.2d 126
 7 Fed.R.Serv.3d 1315
 DUNBAR, Paul and Dunbar, Nancy, his wife
v.
TRIANGLE LUMBER AND SUPPLY COMPANY, a Pennsylvania
Corporation and Frank A. D'Lauro Company, a Pennsylvania
Corporation and Ukrainian Catholic Archdiocese of
Philadelphia, and Alpine Engineered Products, Inc.
v.
TANKLE CONSTRUCTION COMPANY
v.
ALPINE ENGINEERED PRODUCTS, INC.
Appeal of Nancy DUNBAR
 No. 86-1268.
 United States Court of Appeals,
Third Circuit.
 Argued on Jan. 22, 1987.
Decided April 14, 1987.
 
 Isaac Green (argued), Philadelphia, Pa., for appellant.
 Allan Greenberg, Stephen B. Slick, Troy Cloud, Esquire (argued), Rawle & Henderson, Philadelphia, Pa., for appellee Triangle Lumber & Supply Co.
 Before SEITZ, BECKER and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal from an order of the district court dismissing plaintiff's complaint for failure to prosecute. We are required to address the recurring problem confronting a district judge when counsel fails to discharge properly his or her professional obligation to the court and to the client.
 
 I.
 
 2
 Paul and Nancy Dunbar, husband and wife, through the law firm of Ballen, Keiser, Denker, Bor & Gertel (Ballen, Keiser) commenced this diversity action against Triangle Lumber & Supply Company. Mr. Dunbar sought to recover damages for a work-related injury. Ms. Dunbar's claim was based on loss of consortium. The plaintiffs were later divorced.
 
 
 3
 Ballen, Keiser wrote to Ms. Dunbar and advised her that Mr. Dunbar's case would be tried in the spring and that she should get another lawyer because of the divorce. Thereafter, the law firm filed a motion for leave to withdraw as counsel for Ms. Dunbar.
 
 
 4
 On April 18, 1985, the district court received a letter from Isaac Green stating that he would be representing Ms. Dunbar, and requesting a thirty-day continuance of the final pre-trial conference. On April 30, the court held a conference at which Mr. Green stated that he would be entering an appearance for Ms. Dunbar, and alleged that Ms. Dunbar had been prejudiced by Ballen, Keiser's representation. Ballen, Keiser informed the judge that Mr. Dunbar's case was close to settling. The court stated that Ballen, Keiser's motion to withdraw would be granted once Mr. Green entered his appearance for Ms. Dunbar.
 
 
 5
 Mr. Green had not entered an appearance as of May 14. The court therefore scheduled a hearing for May 23, 1985 on Ballen, Keiser's motion to withdraw. On May 20, Mr. Green entered an appearance on behalf of Ms. Dunbar and filed a motion to disqualify the Ballen, Keiser firm, alleging violations of the code of professional responsibility.
 
 
 6
 On May 22, 1985, the court entered an order granting Ballen, Keiser's motion to withdraw. On May 31, Mr. Green filed a motion seeking to vacate the court's order permitting Ballen, Keiser to withdraw for reasons that are not apparent. On July 8, Mr. Dunbar's claim was settled. On July 30, the court denied Ms. Dunbar's motion to vacate its order. It also dismissed as moot the motion to disqualify Ballen, Keiser, extended discovery until September 16 and scheduled a pretrial conference for September 30. The case was listed for an October trial.
 
 
 7
 Mr. Green, on behalf of Ms. Dunbar, filed an appeal from the denial of the motion to vacate the order permitting withdrawal.[1] On September 20, Mr. Green filed a motion to stay the district court's May 22 order which stay was promptly denied.
 
 
 8
 Mr. Green did not appear at the September 30 pretrial conference. On October 28, the district court scheduled a pretrial conference for November 18 and further ordered that "in the event Plaintiff's counsel fails to appear on November 18th, 1985, this case will be dismissed for failure to prosecute." At 4:58 on Friday, November 15, the court received a hand delivered letter stating that Mr. Green would not be able to attend the conference because of a kidney infection.
 
 
 9
 On November 18, 1985, the court scheduled a pretrial conference for December 24, 1985 and listed the case for trial in January. The order further stated that:
 
 
 10
 In the event Plaintiff's counsel does not appear at the conference on December 24, 1985, this case will be dismissed unless this court receives from Plaintiff's counsel on or before December 15, 1985 a report from his physician certifying that counsel is unable to attend said conference because of illness.
 
 
 11
 The deputy clerk was advised by telephone that Mr. Green would not attend the conference, and that a letter from the doctor would be forthcoming. No such letter was ever received.
 
 
 12
 On March 17, the district court ordered a hearing to be held on April 4 at 2:00 to show cause why this action should not be dismissed for lack of prosecution. According to the district court's Memorandum Opinion, Mr. Green called the clerk's office at 9:45 on April 4 and stated that he was going to be late to the hearing "this morning due to a SEPTA strike." When he was told the hearing was at 2:00, he stated that his client, Ms. Dunbar, was probably in the courtroom at that time. This probability is not confirmed in the record. Around 1:40 p.m., Mr. Green called to say he would be a half hour late for the hearing. The court announced that it was dismissing the action for failure to prosecute. Mr. Green apparently entered the courtroom at 2:31 p.m., but did not address the court.
 
 
 13
 By order dated April 18, 1986, the district court formally dismissed Ms. Dunbar's action pursuant to F.R.Civ.P. 41(b). The dismissal was based on various unchallenged defaults and derelictions of duty by Ms. Dunbar's counsel, Isaac Green. The record fully justified the district court's statement that the administration of justice was thwarted and abused insofar as Mr. Green was concerned. This appeal followed.
 
 II.
 
 14
 Incredibly, Mr. Green's appellate brief does not contend that the district court committed error in dismissing Ms. Dunbar's case for failure to prosecute. It was this court which required Mr. Green to address the only proper issue on appeal, whether the district court abused its discretion by dismissing the action under F.R.Civ.P. 41(b). Rule 41(b) provides, in part, "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of any action or of any claim against him."
 
 
 15
 We have cautioned that dismissal in this context is a drastic tool and may be appropriately invoked only after careful analysis of several factors, including,
 
 
 16
 (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet the scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
 
 
 17
 Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir.1984); see Scarborough v. Eubanks, 747 F.2d 871 (3d Cir.1984).
 
 
 18
 In this case, the district court specifically determined that Mr. Green acted in bad faith to avoid bringing this case to trial. We believe the record fully supports this finding and that Mr. Green's conduct rises to the level of willfulness and contumaciousness necessary to support the sanction of dismissal. See Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339 (3d Cir.1982). The district court further found that defendant was prejudiced by the pattern of dilatoriousness but no specific evidence is noted and we find none other than delay. The court also stated that it had considered the imposition of alternative sanctions but it had "determined that such sanctions would have little or no effect in bringing this case to trial."
 
 
 19
 The district court evaluated certain of the factors mentioned in Poulis. It cannot be said that its appraisal amounted to an abuse of discretion. This is particularly so given the extraordinary patience of the court in dealing with Mr. Green. However, one of the factors to be considered under Poulis is the party's personal responsibility. Yet, the district court did not point to any record evidence of Ms. Dunbar's possible awareness of her attorney's derelictions. The only relevant references in the court's Memorandum were to (1) a telephonic statement, presumably by Mr. Green, at 9:45 a.m. on the show cause date, that Ms. Dunbar was probably present in the courtroom; (2) Ms. Dunbar's absence from the show cause hearing; and (3) the absence of communication from Ms. Dunbar to the district court after April 4, 1986, the show cause date. None of the three matters mentioned could support a finding that Ms. Dunbar knew of her counsel's defaults or otherwise bore some personal responsibility for his professional irresponsibility.
 
 
 20
 Given the absence of a finding with record support that Ms. Dunbar bore some responsibility for the flagrant actions of her counsel and the lack of a determination of the facial merits of Ms. Dunbar's claim, we conclude that the interests of justice dictate that the matter be remanded to permit a hearing and determination based on all of the Poulis factors, after notice to Ms. Dunbar and her counsel. See also Carter v. Albert Einstein Medical Center, 804 F.2d 805 (3d Cir.1986).
 
 III.
 
 21
 This court takes judicial notice of the increasing trend toward the dismissal of legal actions based on dereliction of duty by members of the bar. See Poulis v. State Farm, 747 F.2d at 867 (citing cases); see also Carter v. Albert Eisenstein Medical Center, supra. Additionally, we are confident that there are many such dismissals that do not appear in the reported cases.
 
 
 22
 While it is true that Poulis affords some judicial protection to innocent litigants from the consequences of professional defaults, it is evident that such litigants are often in extremis, legally speaking. Yet, they are, nevertheless, dependent on their attorneys to protect their interests. A conflict in interest is almost inherent in such a situation.[2]
 
 
 23
 Defaults in professional obligations are a blight on the legal system and a betrayal of the privilege accorded the legal profession. We have therefore concluded that the growing scope of the problem and the responsibility of the courts to the general public require us to invoke our supervisory power in this area with respect to the district courts within this circuit.
 
 
 24
 We conclude that any motion, whether by court or counsel, seeking an effective dismissal or default judgment based on an apparent default on the part of a litigant's counsel be pleaded with particularity and with supporting material and that where the papers demonstrate reasonable grounds for dismissal on that basis the court shall direct the clerk of the court to mail notice directly to the litigant of the time and place of a hearing on any such motion, reasonably in advance of the hearing date. We are confident the district judges have the necessary remedies to prevent any abuse of this procedure.
 
 
 25
 We think such a procedure will put the client on notice of possible jeopardy to his or her legal interests by counsel's conduct at a time when the client can take appropriate action and when the Poulis balance has not been irretrievably struck in favor of the moving party.
 
 IV.
 
 26
 The order of the district court will be vacated and the matter remanded for further proceedings consistent with this opinion. The Clerk of this Court shall cause a copy of this opinion to be mailed to Ms. Dunbar.
 
 
 27
 Costs will be assessed personally against Ms. Dunbar's counsel.
 
 
 
 [1]
 On October 7, this court dismissed the appeal for lack of jurisdiction
 
 
 [2]
 The district court may wish to consider this factor on remand