

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-15-1994

# Adams v. Trustees of New Jersey Brewery

Precedential or Non-Precedential:

Docket 93-5480

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Adams v. Trustees of New Jersey Brewery" (1994). *1994 Decisions.* Paper 82.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/82

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 93-5480

_____


GUSTAV A. ADAMS; ANDREW F. DOPKINS;
and ROBERT MALCOLM, DECEASED, BY HIS EXECUTRIX LILLIAN MALCOLM;

v.

TRUSTEES OF THE NEW JERSEY BREWERY EMPLOYEES' PENSION TRUST FUND;
LOCAL UNION 843, INTERNATIONAL BROTHERHOOD OF TEAMSTERS;
FALSTAFF BREWING CORPORATION; and
JOSEPH M. BYRNE CO., A CORPORATION OF THE STATE OF NEW JERSEY

(Newark New Jersey District Civil No. 76-01931)


BRUNO MICHOTA; WALTER LEMKE;
ABRAHAM GELLMAN; LAWRENCE BALBACK; BOLLY BONK;
WILLIAM DUNNE; BERNARD KOSCIEWICZ; SIEGFRIED MILCHRAM;
HOWARD SEARS; STEPHEN GARDZINSKI; HARRY WOLF;
BRUNO DZIEDZIC; WILLIAM RIEDEL; SALVATORE GUARNERI;
SAMUEL MONTO; FERMIN LOMA; VINCENT SADOWSKI;
STANLEY KIESNOWSKI; ANTHONY BELLINA; FRANK PAVOLONIS;
WILLIAM ROESCH; MICHAEL DUDA; EDWARD STRITTMATTER;
FREDERICK HUBNER; PETER RUDY; HAROLD WANTHOUSE;
JOSEPH DUFFY; JOSEPH COYLE;
GRACE GREEN, WIDOW OF HAROLD GREEN, DECEASED

v.

ANHEUSER-BUSCH, INCORPORATED, (BUDWEISER);
P. BALLANTINE & SONS; PABST BREWING COMPANY;
FALSTAFF BREWING CORPORATION;
INVESTORS FUNDING CORPORATION; RHEINGOLD BREWERIES, INC.;
THE NEW JERSEY BREWERY EMPLOYEES' PENSION TRUST FUND;
HENRY T. HAMILTON; HERBERT V. JOHNSON; FRANK A. JACKIEWICZ;
FRANK SULLIVAN; HERBERT HEILMANN, JR.; HENRY TCHORZEWSKI;
BENNO MERKER; and ARTHUR SPINELLO, AS TRUSTEES OF
THE NEW JERSEY BREWERY EMPLOYEES' PENSION TRUST FUND

(Newark New Jersey District Civil No. 77-02543)


Pension Benefit Guaranty



1

_____

On Appeal from the United States District Court
        for the District of New Jersey
   (D.C. Civil Action Nos. 76-01931 & 77-02543)
           _____


            Argued March 1, 1994

    Before:  STAPLETON and SCIRICA, <u>Circuit</u> <u>Judges</u>
           and SMITH, <u>District</u> <u>Judge</u>*

            (Filed July 15, 1994)


PATRICIA A. SCOTT-CLAYTON, ESQUIRE (Argued)
BERNARD P. KLEIN, ESQUIRE
Pension Benefit Guaranty Corporation
1200 K Street, N.W.
Washington, D.C. 20005

SUSAN C. CASSELL, ESQUIRE
Office of United States Attorney
970 Broad Street, Room 502
Newark, New Jersey 07102

   Attorneys for Appellant,
   Pension Benefit Guaranty Corporation


ROSEMARY ALITO, ESQUIRE (Argued)
EDWARD F. RYAN, ESQUIRE
Carpenter, Bennett & Morrissey
100 Mulberry Street
Three Gateway Center
Newark, New Jersey 07102

   Attorneys for Appellee,
   Anheuser-Busch, Inc. (Budweiser)

*The Honorable D. Brooks Smith, United States District Judge for the Western District of Pennsylvania, sitting by designation.

JOHN J. RIZZO, ESQUIRE (Argued)
Stryker, Tams & Dill
Two Penn Plaza East
Newark, New Jersey 07105

  Attorney for Appellee,
  Pabst Brewing Company

_____

OPINION OF THE COURT
_____

SCIRICA, <u>Circuit</u> <u>Judge</u>.


     After a four and one-half year hiatus, the Pension Benefit Guaranty Corporation attempted to reopen its case against Pabst Brewing Co. and Anheuser-Busch, Inc. for unfunded benefits in a terminated pension fund. The district court dismissed the case for lack of prosecution under Federal Rule of Civil Procedure 41(b) and denied as untimely the PBGC's motion for reconsideration.

     The PBGC appeals contending the district court abused its discretion in dismissing the case. The PBGC also claims its motion for reconsideration was timely, and that due process required notice and a hearing before dismissal.

     We hold the district court correctly found the motion for reconsideration was untimely, and that the PBGC received adequate notice. Nonetheless, without considering the evidence the PBGC proffered with its motion for reconsideration, we find the district court should not have dismissed the case with prejudice. We agree that the PBGC's behavior was negligent

4

and inexcusable, but think dismissal was too harsh a sanction. Therefore we will remand for reinstatement of the case and consideration of lesser sanctions.

## I.

In 1956, Pabst, Anheuser-Busch, and other breweries entered into an agreement with the New Jersey Brewers' Association, the Brewery Workers Joint Local Executive Board of New Jersey, and certain of its local unions to establish the "New Jersey Brewery Workers Trust Fund" (the Fund). Each brewery negotiated periodic collective bargaining agreements specifying the amount it would contribute to the Fund, which was to provide brewery workers' retirement pensions.

As employment in the brewing industry declined in the late 1960s, the Fund's unfunded liabilities mounted, exceeding $50 million by 1970. To protect its solvency and reduce the actuarial deficit, the Fund's trustees adopted a Partial Termination Clause, limiting benefits for participants whose employers had withdrawn from the fund.

In 1973, Pabst and Anheuser-Busch (collectively, the Breweries) withdrew from the Fund and set up separate funds for their employees. Other breweries also withdrew throughout the 1970's. In 1978 the Fund was terminated and the PBGC was appointed statutory trustee under Title IV of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1342(b)&(c) (1988).

Coinciding with the termination, 29 employees (the Employees) sued Pabst, Anheuser-Busch, other breweries, the Fund,

5

its trustees, and the PBGC, for benefits under the Labor Management Relations Act of 1947, 29 U.S.C. §§ 185 & 186 (1988 & Supp. IV 1992), and ERISA, 29 U.S.C. §§ 1132, 1302, 1303 (1988 & Supp. IV 1992). In 1979, the PBGC was substituted for the Trustees, and the Employees added a fifth count solely against the PBGC, seeking a declaration that the PBGC was required to guarantee them certain nonforfeitable rights to pension benefits. A class was certified for this count.

The PBGC filed cross-claims against Pabst, Anheuser-Busch, and Rheingold (another brewery), seeking employer indemnification under 29 U.S.C. § 1364 (1988 & Supp. IV 1992) for benefits the PBGC might be required to pay employees under 29 U.S.C. § 1322.[0] The PBGC filed a similar claim against Chock-Full O'Nuts Corp., parent company of Rheingold.[0] The Breweries filed cross-claims against the PBGC seeking to recover or offset

---

[0]Subject to a number of qualifications, 29 U.S.C. § 1322(a) (Supp. IV 1992) provides that the PBGC will "guarantee . . . the payment of all nonforfeitable benefits . . . under a single-employer plan" in the event of its termination. "Single-employer plans" include plans such as this one to which a number of employers contribute, each pursuant to an individual collective bargaining agreement with its respective employee organization. See 29 U.S.C. § 1301(a)(3)&(b)(2) (1988).
    Section 1364, "Liability of employers on termination of plan maintained by more than one employer," assigns liability for unfunded benefits of such single-employer plans to all employers maintaining it or who made contributions to it in any of the five years preceding its termination. It also provides that the PBGC will determine the liability of each employer and gives the formula for so doing. The formula essentially divides the plan's unfunded benefits among all employers in proportion to what each employer should have contributed during the plan's last five years of operation. Id. § 1364 (1988 & Supp. IV 1992).
[0]Claims between the PBGC and Rheingold and Chock-Full O' Nuts were later dismissed by stipulation.

their liability to the PBGC because of payments into both the Fund and the individual corporate plans.

All parties filed summary judgment motions. On September 22, 1980, the district court granted summary judgment to the Employees against the PBGC on the fifth count, holding that the Partial Termination Clause was invalid; and granted summary judgment against the Employees on all their other claims. Michota v. Anheuser-Busch, Inc., 526 F. Supp. 299 (D.N.J. 1980). Thus, all causes of action by the Employees against the Breweries were disposed of, but the Employees' claims against the PBGC continued, as did the cross-claims between the PBGC and the Breweries.

On appeal, we reversed the district court only on the summary judgment for the Employees on the fifth count, holding the Partial Termination Clause was not void. We remanded, however, for determination of whether the Employees received proper notification of the clause. Adams v. New Jersey Brewery Employees' Pension Trust Fund, 670 F.2d 387 (3d Cir. 1982).

After discovery on the notice issue, the PBGC and the Employees renewed their summary judgment motions, and the Breweries filed for summary judgment to dismiss the PBGC cross-claims for statutory employer indemnification. Because ERISA was not enacted until 1975, the Breweries claimed that statutory employer liability was not meant to apply to employers who had withdrawn from the Trust Fund in 1973, and in the alternative, that such liability would violate the Due Process Clause.

7

On October 7, 1983, after the case was transferred to another judge, the district court granted the Employees' summary judgment motion on the fifth count, holding they did not receive adequate notice of the Partial Termination Clause. The court denied Pabst and Anheuser-Busch's summary judgment motions, ruling that liability was appropriate under 29 U.S.C. § 1364 and the Due Process Clause. The court certified the issues for interlocutory review.

On a second appeal, we reversed the grant of summary judgment for the Employees, holding they received adequate constructive notice of the Partial Termination Clause as a matter of law. Michota v. Anheuser-Busch, Inc., 755 F.2d 330, 332 (3d Cir. 1985). We declined to address the certified questions, and remanded "for a final determination of the employers' liability on the PBGC's cross-claim for any remaining unfunded portions of the Brewery Pension Fund." Id. at 336.

On October 1, 1986, the district court granted the PBGC's motion to dismiss the Breweries' cross-claims against the PBGC for reduction of their statutory liability based on their payments to the Employees through their corporate pension plans. The court also denied the Breweries' motion for reconsideration of their due process objection to liability under 29 U.S.C. §1364.

In January, 1987, after the case was transferred to yet another judge, the Employees again raised their claims for guaranteed benefits from the PBGC. The court held we had ruled with finality that the Partial Termination Clause defeated those

8

claims, and granted summary judgment to the PBGC against the Employees.  Michota v. Anheuser-Busch, Inc.,  C.A. No. 77-2543 (D.N.J.March 17, 1988) (Memorandum Opinion and Order).  We affirmed by judgment order, October 4, 1988. Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund, No. 88-5305 (3d Cir. Oct. 4, 1988) (judgment order).

Following our affirmance, the only claims remaining were the PBGC's cross-claims against the Breweries for employer indemnification.  From October, 1988 to March, 1993 there was no contact among the parties and the court, although the PBGC engaged in limited, informal discovery with third parties on these claims.  In December, 1992, the PBGC contacted the district court and was informed by the clerk that the case had been administratively closed.  On March 19, 1993, the PBGC moved to reopen the case, seeking summary judgment against the Breweries. Without explaining the four and one-half year break in pursuing its claims, the PBGC contended the only remaining issue in the case was the amount of the Breweries' liability and described how that liability should be calculated.  In response, Anheuser-Busch argued that the case should be dismissed under Federal Rule of Civil Procedure 41(b), noting that the court could do so sua sponte and discussing the relevant factors for dismissal.  Pabst included in its letter response a form for an order denying the PBGC's motion to reopen and dismissing the case with prejudice. Neither party, however, formally moved for dismissal with prejudice.

In reply, the PBGC argued that the court should regard the administrative closure of the case as a clerical mistake and reopen under Rule 60(a). The PBGC responded to some of the Breweries' assertions -- whether the PBGC was inappropriately seeking relief under Civil Procedure Rule 60(b) (relief from a final judgment) and whether the case had in fact already been dismissed -- but did not explain its delay in prosecution, contending that a dismissal under Rule 41(b) would be inappropriate because it had not failed to comply with any procedural rules or court orders, and that the defendants had not moved for dismissal.

On June 7, 1993, the district court dismissed the PBGC's claims under Rule 41(b). Noting that the PBGC had given no explanation for its dilatory conduct, the court said that for equitable reasons it would sua sponte treat the defendants' motions and responses as a 41(b) motion to dismiss for lack of prosecution. Acknowledging that a dismissal for lack of prosecution was a harsh sanction because it operates as an adjudication on the merits, the court evaluated the case in light of the six factors set forth in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984), and found all factors pointed toward dismissal except the factor evaluating the merits of the PBGC's case.

On June 24, 1993, the PBGC filed a motion under Federal Rule of Civil Procedure 59(e) for alteration or amendment of the dismissal order. The PBGC submitted an explanation of the delay in prosecution, describing how the case was shifted from one

10

overloaded attorney to another, and documented a small amount of "informal discovery" during the hiatus, consisting of a few letters between the PBGC and consultants or fund managers. The court denied the motion as untimely, noting that Rule 59(e)'s ten-day time limit was jurisdictional. The court also stated that had the motion been timely, it would have affirmed its prior holding, having found nothing in the proffered arguments and documents giving cause for reconsideration.

The PBGC filed a timely notice of appeal.

## II.

The district court had jurisdiction of the PBGC's ERISA employer liability claim against the Breweries under 29 U.S.C. §1303(e)(3). The court's dismissal of that claim and its denial of the motion for reconsideration are final orders. We have jurisdiction under 28 U.S.C. § 1291.

The motion for reconsideration was denied because a jurisdictional time limit had expired. We exercise "plenary review of the district court's choice and interpretation of applicable tolling principles," Sheet Metal Workers Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1278 (3d Cir. 1991), and of jurisdictional decisions by the district court, Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1002 (3d Cir. 1992). The question of whether due process required formal notice and a hearing before dismissal is also subject to plenary review. Gregoire v. Centennial Sch. Dist., 907 F.2d 1366, 1370 (3d Cir.), cert. denied, 498 U.S. 849 (1990).

11

We review the dismissal for failure to prosecute under Rule 41(b) for abuse of discretion.  "The question, of course, is not whether [the Supreme] Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642 (1976) (per curiam).  While we defer to the discretion of the district court, we are mindful that dismissal with prejudice is only appropriate in limited circumstances:  "Because [an order of dismissal] deprives a party of its day in court, our precedent requires that we carefully review each such case to ascertain whether the district court abused its discretion in applying such an extreme sanction," Scarborough v. Eubanks, 747 F.2d 871, 875 (3d Cir. 1984), and in this review "doubts should be resolved in favor of reaching a decision on the merits," id. at 878.

## III.

Rule 59(e) requires a motion for reconsideration to "be served not later than 10 days after entry of the judgment."  Fed. R. Civ. P. 59(e).  Rule 6(a) provides that in computing any time period under the Rules of Civil Procedure, the day of the event from which the designated period of time begins to run shall not be included, nor shall intermediate Saturdays, Sundays, or legal holidays, if the period is less than eleven days.  Rule 6(b) provides that the time limit of Rule 59(e) may not be judicially extended; as we have explained, the ten-day period "is jurisdictional, and cannot be extended in the

12

discretion of the district court."  Welch v. Folsom, 925 F.2d 666, 669 (3d Cir. 1991) (internal quotations omitted).

The district court's order denying the PBGC's motion to reopen the case and dismissing it with prejudice was dated May 25, 1993, and docketed June 7.  The PBGC served a "Motion to Alter or Amend the Judgment" under Rule 59(e), with accompanying affidavits and documents, on June 24.  Not counting weekend days, ten days after June 7 would be June 21.  Therefore, the June 24 service by PBGC was not timely.[0]

The PBGC argues that Rule 6(e) extended the deadline by three days, rendering its motion timely.  Rule 6(e) provides:
> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Fed. R. Civ. P. 6(e) (emphasis added).  The PBGC claims that since they were "served" the judgment of the court by mail, the rule applies to extend the period.

The Rule 6(e) extension is inapplicable here.  Rule 59(e) gives the right to move for reconsideration "not later than 10 days after entry of the judgment." (Emphasis added.)  Thus, the period for bringing the 59(e) motion begins with "entry of judgment."  Rule 6(e) only extends time limits that begin with

---

[0]The district court apparently considered the date the PBGC's 59(e) motion was docketed, June 28, rather than the date of service, June 24, as the relevant event to end the 59(e) period. However, the error was harmless since, as shown above, June 24 also falls outside the time limit.

"service of a notice or other paper upon the party."  See, e.g.,
Fed. R. Civ. P. 12(a)(1)(A) (requiring defendant's service of
answer "within 20 days after being served with the summons and
complaint").

This facial reading is explicitly supported by our
caselaw.  In Sonnenblick-Goldman Corp. v. Nowalk, 420 F.2d 858
(3d Cir. 1970), a party claimed the time limit for his Rule 59(e)
motion should be extended by three days under Rule 6(e).  He
asserted "that since the Clerk notified the parties by mail of
entry of the judgment, he should have had three additional days
within which to serve the motion."  Id. at 860.  We stated, "it
appears that filing of a motion such as defendant's [59(e)
motion] is not conditioned upon notice of entry of judgment," and
concluded 6(e) did not apply.  Id.

**IV**.

The PBGC argues in the alternative that the dismissal
violates due process, or constitutes an abuse of discretion,
because there was no formal notice or hearing.  We find the PBGC
had adequate notice of the dismissal, and forewent its
opportunities to respond.

Link v. Wabash R.R., 370 U.S. 626, 632 (1962) gives
guidance on notice and hearings prior to 41(b) dismissals.  Link
sued Wabash Railroad in U.S. district court in 1954 after his car
collided with a Wabash train.  After three years he prevailed
against Wabash's motion for judgment on the pleadings, and a
trial date was set but then vacated by the court.  In 1959, after
three years of little activity, the court initiated a hearing to

14

show cause why it should not dismiss.  Deciding to retain the case, the court set a trial date for July, 1959, which it later vacated at the defendant's request.  More interrogatories were exchanged, and a pre-trial conference was set for October, 1960.  On the day of the conference, Link's lawyer called and said he was in another city doing other work, and asked that the conference be rescheduled.  The court declined, and dismissed the case with prejudice for failure of plaintiff's counsel to appear and failure to prosecute as an exercise of its inherent power.  Id. at 627-29.

The Supreme Court affirmed, stating that a court could dismiss sua sponte under Rule 41(b).  The Court further held that "the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing" does not "necessarily render such a dismissal void."  Id. at 632.  It explained:

> It is true, of course, that the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked.  But this does not mean that every order entered without notice and a preliminary adversary hearing offends due process.  The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct.  The circumstances here were such as to dispense with the necessity for advance notice and hearing.

Id. (internal quotations and citations omitted).  The Court also stated that the availability of relief from judgment for mistake,

15

excusable neglect, etc., under Rule 60(b), which the plaintiff had not sought, "renders the lack of prior notice of less consequence." Id.

The circumstances in Link showing the plaintiff should have known it risked dismissal included three years of inactivity, a motion from the court to show cause why the case should not be dismissed after three years of inactivity, the plaintiff's failure to answer interrogatories, and, on the day of dismissal, the plaintiff's attorney's missing a pretrial conference. Id. at 629 n.2, 634-35 n.11. Under these circumstances, an attorney should be on notice that dismissal may ensue, so that advance notice is not required, especially where Rule 60(b) provides an "escape hatch" by allowing the reopening of cases inadvisedly closed. Id. at 632.

While the harshness of dismissal with prejudice generally counsels giving formal notice in advance, the PBGC had adequate opportunity to defend itself against dismissal without such formal notice. Before dismissal, the PBGC did not engage in problematic behavior like the Link plaintiff: there had been no previous hearing to show cause why the court should not dismiss, the PBGC had met discovery requests, and it did not miss any court appointments. But other factors clearly warned the PBGC it risked dismissal: Anheuser-Busch's brief argued for 41(b) dismissal and went through the 6-factor Poulis analysis, and Pabst included a draft of a dismissal order in its response to the motion to reopen. Even if these factors alone did not put the PBGC on notice, the balance is tipped by the availability of

16

the Rule 59(e) motion.  After the court's order of dismissal, the PBGC had the opportunity to present its explanation of the delay in a motion to alter or amend the judgment of dismissal under Rule 59(e).  Like the plaintiff in Link, the PBGC did not avail itself of this escape hatch.[0]  Having foregone this opportunity, the PBGC cannot claim it was denied due process or that the court abused its discretion because of a lack of notice and hearing.

Notwithstanding, the PBGC argues that we should extend it the right to notice and a hearing before dismissal under Dunbar v. Triangle Lumber & Supply Co., 816 F.2d 126, 129 (3d Cir. 1987).  We disagree.  In Dunbar, observing no evidence implicating the client in the attorney's dilatory behavior and bad faith, we expressed concern over the trend of dismissal of legal actions for dereliction of duty by counsel.  To protect litigants, we held that any motion to dismiss by court or counsel "based on an apparent default on the part of litigant's counsel" be pleaded with particularity and with supporting material, and that "where the papers demonstrate reasonable grounds for dismissal on that basis the court shall direct the clerk of the court to mail notice directly to the litigant of the time and place of a hearing on any such motion."  Id. at 129.  This is to "put the client on notice of possible jeopardy to his or her legal interests by counsel's conduct at a time when the client

---

[0]The motion filed outside of the jurisdictional time limit was as good as no motion at all.  There is irony in a party's seeking to explain why its delay in prosecuting a case is excusable rather than dilatory, but missing the deadline for making the explanation.

17

can take appropriate action and when the Poulis balance has not been irretrievably struck in favor of the moving party."  Id.

The PBGC argues that without Dunbar protection, parties with in-house counsel, such as the government, will unfairly suffer dismissal without the formal warning given to parties with outside counsel.  However, Dunbar specifically establishes special procedural protection for parties with outside counsel in order to benefit the client that had no part in, and no knowledge of, its attorney's delinquent behavior.  Where a client had or should have had independent knowledge of the delinquency that was the grounds for dismissal, we have held notice and hearing are not required.  See  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1147 (3d Cir. 1990) (no Dunbar proceedings required where plaintiff had been personally sanctioned for misconduct and had issued certifications contesting dismissal); Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins. Co., 843 F.2d 683, 693 (3d Cir. 1988) (no Dunbar proceedings required where plaintiff present at hearings regarding attorney's misconduct and possible sanctions).  Without formal notice and hearing, a responsible client might be unaware that its attorney is risking dismissal; a party with in-house counsel, however, is deemed to be aware of how its case is proceeding, and of circumstances indicating dismissal may be imminent.  The PBGC, represented by in-house counsel, is held to have known whatever its agents, including its attorneys, knew.  It merits no further notice than that required in Link.

18

Because the PBGC has already had (and failed to use) adequate opportunity to present its excuses on the delay, we will not consider the affidavits and documents it submitted with its motion for reconsideration.  We do not, however, accept Pabst's contention that we should also refuse to consider the legal arguments against dismissal the PBGC now raises on appeal.  While "[w]e can consider the record only as it existed at the time the court below made the order dismissing the action," Jaconski v. Avisun Corp., 359 F.2d 931, 936 n.11 (3d Cir. 1966), the party is not required to test its legal arguments before the district court in a Rule 59(e) motion before making them on appeal.  We have discretion to hear not only arguments but also claims raised for the first time on appeal, Singleton v. Wulff, 428 U.S. 106, 121 (1975).

**V.**

In evaluating whether the district court abused its discretion in dismissing with prejudice, our review is "guided by the manner in which the trial court balanced [six] factors . . . and whether the record supports its findings."  Poulis, 747 F.2d at 868.  The six factors are:

> (1)  the extent of the party's personal responsibility;
> (2)  the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;[0]
> (3)  a history of dilatoriness;
> (4)  whether the conduct of the party or the attorney was willful or in bad faith;

---

[0]In evaluating Rule 41(b) dismissals, we look more generally for "[p]rejudice to the other party."  Scarborough, 747 F.2d at 876.

19

> (5) the effectiveness of sanctions other than dismissal, which entails an analysis of <u>alternative sanctions</u>; and
> (6) the <u>meritoriousness</u> or the claim or defense.

<u>Poulis</u>, 747 F.2d at 868.

The district court thoroughly considered all of the six <u>Poulis</u> categories, and found all except meritoriousness indicated dismissal. We likewise will consider each factor in turn.

### 1. **The party's personal responsibility**

#### a.

Although a party may justly suffer dismissal "because of his counsel's unexcused conduct," <u>Link</u>, 370 U.S. at 633, we "have increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault." <u>Carter v. Albert Einstein Medical Ctr.</u>, 804 F.2d 805, 807 (3d Cir. 1986); <u>see also</u> <u>Burns v. MacMeekin</u>, 722 F.2d 32, 35 (3d Cir. 1983) (holding district court must consider alternative remedy to dismissal, because "[t]he brunt of the order [to dismiss] falls on plaintiffs, who have been deprived of the opportunity to litigate their case on the merits, when the only culpable party may be their attorney."). Thus, in determining whether dismissal is appropriate, we look to whether the party bears personal responsibility for the action or inaction which led to the dismissal.

#### b.

The district court held the PBGC personally responsible, explaining, "[t]his is not the sympathetic situation

of an innocent client suffering the sanction of dismissal due to dilatory counsel whom it hired to represent it." Michota v. Anheuser-Busch, Inc, C.A. No. 77-2543, slip op. at 7 (D.N.J. May 25, 1993). We agree. The PBGC is personally responsible for delay by its in-house counsel.

We do not accept the PBGC's argument that because it administers a pension guarantee program in which employers participate, we should consider the employers' lack of personal responsibility for the delay. The PBGC contends that because those employers pay premiums into a common fund that backs pension funds, they will have to pay higher premiums to cover the loss if the PBGC cannot prosecute this case. The focus on a party's personal responsibility, the PBGC argues, is to protect innocent parties such as these participants in ERISA's Title IV program, so for their sake dismissal is inappropriate.

While it may be true that the PBGC's loss would eventually be passed on to parties who were not responsible, the personal responsibility criterion does not aim to protect all innocent victims from dismissal of a case. If it did, a vast range of parties could claim immunity from dismissal to prevent suffering to third parties. Carter and Dunbar aim to protect clients who try their best to litigate cases properly, but are thwarted by their attorneys' delinquent behavior. Where, as here, a party is personally responsible for failure to prosecute, the effect of dismissal on third parties cannot be dispositive.

### 2. Prejudice to adversary

#### a.

21

Evidence of prejudice to an adversary "would bear substantial weight in support of a dismissal or default judgment." Scarborough, 747 F.2d at 876. Examples of prejudice include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. Prejudice also includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery. Bedwell, 843 F.2d at 693. Prejudice need not be "irremediable harm that could not be alleviated by [the] court's reopening discovery and postponing trial." Id. (internal quotation marks omitted) (alteration in original).

**b.**

The district court held that the defendants would be prejudiced by the amount of interest they would have to pay on their liability, which would exceed the liability itself, and by the difficulty of mounting a defense so long after the events at issue. We cannot agree.

Interest paid on money owed does not amount to prejudice, but rather represents the value of possession of the money by the debtor. It is the amount the Breweries should have made on their money if they had kept it prudently invested during these 17 years. If the resolution of this case is that they had no right to the money in the first place, neither do they have right to the value they have gained from it while the case was litigated.

22

The argument that the delay will prejudice the Breweries' defense, though not meritless, is ultimately unconvincing. The PBGC claims the determination of the employer's statutory liability for unfunded portions of the Brewery Pension Fund involves computing, as of the date of plan termination, the value of the plan's assets and the participants' guaranteed benefits, and determining Anheuser-Busch's and Pabst's proportionate share of liability for the unfunded benefits. See supra note **Error! Bookmark not defined.**. The PBGC asserts that if there are any genuine issues of material fact, the evidence will be computational or documentary.

The Breweries contend that each side will call expert witnesses and fact witnesses, including the Fund's actuary, to testify on the status and investments of the Fund in the 1970s before and after termination. They would also reargue their claims regarding the applicability of ERISA to employers who withdrew from a fund before ERISA's enactment.

We do not see much if any prejudice resulting from the delay. The Breweries do not challenge the PBGC's characterization of the computation process, which is a records-based determination. Expert witnesses would only comment on evidence; there should be no problem with dimmed memories. Similarly, fact witnesses would rely primarily on records to describe the fund's history. The Breweries have claimed neither that any records have been lost, nor that their discovery is incomplete. Even if trial had taken place in 1988 after our last ruling, the case still would have turned on events over a decade

old -- the Breweries' withdrawal in 1973 and the Fund's termination in 1977. Finally, we note that the Breweries' principal contentions are statutory and constitutional arguments on whether ERISA properly applies to them, and these could be made at any time.

It is possible the Breweries may suffer some prejudice from this delay, in the form of additional costs or lost information. But there has been no testimony to this effect, and such prejudice, if it exists, would be minor and appropriately addressed by more modest sanctions than dismissal.

### 3. History of dilatoriness

#### a.

Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders. Poulis, 747 F.2d at 868; Comdyne I, 908 F.2d at 1148. On the other hand, "sloppiness" while an attorney is moving offices that results in untimely response to two court orders and a late retention of local counsel does not amount to "a pattern of deliberate dilatory action," Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339, 343 (3d Cir. 1982), and "inexcusable" lateness of one or two weeks in meeting four court deadlines is not a "default comparable to Poulis," where the plaintiff was non-responsive and tardy, Scarborough, 747 F.2d at 875.

Furthermore, a party's problematic acts must be evaluated in light of its behavior over the life of the case. In Dyotherm Corp. v. Turbo Machine Co., 392 F.2d 146 (3d Cir. 1968),

24

we overturned a dismissal for want of prosecution, despite Dyotherm's failure to inform the court of its activities as requested, its late and unprepared appearance at trial without its key witness, and its failure to produce an adequate excuse for the witness's absence.  While acknowledging the inexcusable behavior of plaintiff's counsel, we noted, among other mitigating factors, that there was no indication of dilatory tactics during the first two and a half years in which the case was litigated. Id. at 149.

**b.**

The district court found that "[t]he history of dilatoriness also favors dismissal," and said it was at a loss to understand why the PBGC had stopped prosecution so abruptly or why it began again after so long.  Michota, slip op. at 8.  We agree the failure to prosecute for more than four years amounts to a history of dilatoriness.

Four and one-half years is a significant and inexcusable delay, and could constitute grounds for dismissal under Rule 41(b):

> "[F]ailure to prosecute" under the Rule 41(b) does not mean that the plaintiff must have taken any positive steps to delay the trial or prevent it from being reached by operation of the regular machinery of the court.  It is quite sufficient if he does nothing, knowing that until something is done there will be no trial.

Bendix Aviation Corp. v. Glass, 32 F.R.D. 375, 377 (E.D. Pa. 1962), aff'd 314 F.2d 944 (3d Cir.) (per curiam), cert. denied, 375 U.S. 817 (1963).

25

This history of dilatoriness weighs toward, but does not mandate, dismissal.  The delay here is not on the scale of that in Bendix, where the case lay dormant for 11 years, id. at 376, nor was there dilatoriness as in Bedwell, where the plaintiff repeatedly and strategically delayed and disobeyed court orders.  Bedwell, 843 F.2d 683 (3d Cir. 1988).  There has been no dispute that the PBGC has met all deadlines and court dates during the course of the litigation.  Under Dyotherm the four and one-half year delay is somewhat mitigated by the PBGC's ten years of responsible litigation.

## 4. Was the attorney's conduct
## willful or in bad faith?
### a.

In evaluating a dismissal, this court looks for "the type of willful or contumacious behavior which was characterized as `flagrant bad faith,' in National Hockey League, [427 U.S. at 643]." Scarborough, 747 F.2d at 875; see also Poulis, 747 F.2d at 866. In National Hockey League, the district court dismissed the case after 17 months in which the plaintiffs failed to answer crucial interrogatories despite numerous extensions, and broke promises and commitments to the court. The Supreme Court approved the dismissal as a proper response to such behavior.

Willfulness involves intentional or self-serving behavior. In Donnelly, when the plaintiff's case was transferred from Texas to New Jersey, he was tardy meeting court orders to obtain New Jersey counsel. We held the plaintiff's difficulties did not amount to an inability to comply, but rather, "[a]t best . . . show[ed] a failure to move with the dispatch which the notice and order to show cause required, and provide[d] no basis for exculpation of plaintiff's Texas counsel on the grounds of inability." Donnelly, 677 F.2d at 342. Noting, however, that the Texas lawyer had timely attempted to locate local counsel, we also held, "no willfulness is mirrored in the record." Id. at 343 (internal quotation omitted). Thus, tardiness not excused for inability is not necessarily willful. See also Scarborough, 747 F.2d at 875 (where attorney filed all required papers, albeit some tardily, behavior was not willful or contumacious); c.f.

27

*Bedwell*, 843 F.2d at 695 (where plaintiff and attorney did not comply with court orders and discovery requests without plausible excuses and delay appeared to be calculated, district court properly found conduct willful, not merely negligent).

### b.

The district court considered that it had received no explanation from the PBGC regarding the four and one-half year hiatus, no suggestion that intervening events had prevented the PBGC from prosecuting the case, and no hint that the PBGC had done anything except some limited discovery since the Court of Appeals ruled in 1988. It inferred from this "at least an absence of a good faith effort to prosecute and a willful failure to act." *Michota*, slip op. at 8. The PBGC argues that the court was improperly presuming willfulness or contumacity.

While there may have been an absence of a good faith effort to prosecute, this does not necessarily amount to willfulness or bad faith as this court has defined it. The behavior here was different from the contumacious behavior in *National Hockey League* or *Bedwell*, where there were repeated and self-serving instances of flouting court authority and professional irresponsibility. Rather, there is a resemblance to *Donnelly*, as circumstances here also "show a failure to move with the dispatch" reasonably expected of a party prosecuting a case. *Donnelly*, 677 F.2d at 342. We will not call the PBGC's delay willful as there is no indication it was strategic or self-serving. Rather, it is a prime example of inexcusable negligent behavior.

28

### 5. Alternative sanctions

#### a.

Before dismissing a case with prejudice, a district court should consider alternative sanctions. In <u>Titus v. Mercedes Benz</u>, 695 F.2d 746, 748-49 (3d Cir. 1982), the district court dismissed the case after the plaintiffs repeatedly failed to prepare a draft pretrial order. On appeal, we stated, "district courts should be reluctant to deprive a plaintiff of the right to have his claim adjudicated on the merits," <u>id.</u> at 749, and held the district court was required to consider sanctions other than dismissal, <u>id.</u> at 750, and record its findings, <u>id.</u> at 751. If further findings supported a dismissal with prejudice, the court could reinstate the dismissal with prejudice. <u>Id.</u>; <u>id.</u> at 754 (Fullam, J., concurring). In other cases, we have remanded for consideration of alternative sanctions with a bar on dismissal. <u>See</u>, <u>e.g.</u>, <u>Donnelly</u>, 677 F.2d at 344; <u>Carter</u>, 804 F.2d at 808.

#### b.

The district court considered and rejected alternative sanctions. While it noted it could charge the PBGC for the costs the Breweries incurred because of the delay, the court reasoned this would not compensate for the prejudice to the Breweries or the harm to the efficient administration of justice.

It has not been shown, however, that the Breweries' case has been seriously compromised. Rather, we have found the delay caused no significant prejudice to the defendants. Among other sanctions, favorable treatment for defendants on

29

evidentiary issues affected by the delay, if there are any, and payment of attorneys' fees and/or costs to the Breweries related to the delay might be appropriate here. And while we join the district court's condemnation of the PBGC's irresponsibility toward the judicial process, we believe lesser sanctions will chasten effectively without the extreme result of "depriv[ing] the plaintiff of the right to have [its] claim adjudicated on the merits." Titus, 695 F.2d at 749.

### 6. Meritoriousness of the claim

#### a.

The standard of meritoriousness when reviewing a dismissal is moderate:

> [W]e do not purport to use summary judgment standards. A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense.

Poulis, 747 F.2d at 869-870. Where a plaintiff makes out a prima facie case, but the defendant raises a prima facie defense, the factor may not weigh in favor of the plaintiff. Id. at 870.

#### b.

The district court found the facial meritoriousness of the PBGC's claims to be the one Poulis factor weighing against dismissal. Pabst concedes this facial meritoriousness, although both Pabst and Anheuser-Busch reiterate their statutory and constitutional arguments against the applicability of ERISA.

We agree with the district court that the PBGC's claims are facially meritorious. The district court rejected the

30

Breweries' statutory and constitutional defenses to liability. We then denied a request for interlocutory review, and denied the Breweries' motion for reconsideration and granted the PBGC summary judgment on the Breweries' cross-claims to reduce their ERISA liability. We remanded the case "for a final determination of the employers' liability on PBGC's cross-claim for any remaining unfunded portions of the Brewery Pension Fund." Michota v. Anheuser-Busch, Inc., 755 F.2d at 336. Although Pabst argues that the district court can undo its previous decision on retroactive liability, the Breweries do not cite any new rulings on the issue.[0] Because of the facial strength of the PBGC's case, the meritoriousness factor weighs heavily against dismissal.[0]

---

[0]Rather, they refer to general language from Henglein v. Informal Plan, 974 F.2d 391 (3d Cir. 1992), and dicta from Concrete Pipe and Prods., Inc. v. Construction Laborers Pension Trust, 113 S. Ct. 2264, 2293 (1993) (O'Connor, J., concurring), on retroactive application of ERISA. Neither authority resolves this issue, or even applies directly.

[0]The parties argue at length over whether, in light of two pre-Poulis cases, the strength of the PBGC's case controls the decision regarding dismissal. In Glo Co. v. Murchison & Co., 397 F.2d 928 (3d Cir. 1967) (per curiam), aff'd on rehrg., 397 F.2d 929 (3d Cir. 1968) (per curiam), cert. denied, 393 U.S. 939 (1968), an action commenced in 1954 was dismissed after an order to show cause in 1963. Although we noted that a dismissal "certainly seems justified by the inaction of counsel in failing to move for trial after repeated warnings," we reversed because "there appears to be no dispute that an amount of money is owed to plaintiff under the contracts in suit." Id. at 929. Glo Co. was followed in Spering v. Texas Butadiene & Chem. Co., 434 F.2d 677 (3d Cir. 1970), cert. denied, 404 U.S. 854 (1971), where an attorney sued a former client in 1965 for payment for services rendered between 1954 and 1964. The defendants denied his claims except for services rendered after February, 1964. Id. at 678. After a year of litigation, the plaintiff did virtually nothing in the case for three years, and the court dismissed in 1969. Id. at 680. We found there had been no abuse of discretion and

Having considered the evidence before the district court when it dismissed this action with prejudice, we find the

---

affirmed the dismissal, but also ruled that, because there was no dispute over the defendant's debt to plaintiff for services in 1964, the plaintiff should be allowed to pursue that claim.  We then noted, without elaboration, that the "unusual nature of the circumstances" of Glo Co. was not present in Spering.  Id. at 681.

Glo Co. and Spering do not purport to set out a rule, and at any rate the facts in this case are different in a critical way.  Here, unlike in Glo Co. and Spering, the defendants have not admitted liability.  We also note that those cases pre-date Poulis, and should not be taken to indicate that a court need not consider all six Poulis factors.  We do, however, endorse the general principle of Glo Co. and Spering, that where a party contesting dismissal has a strong case, the meritoriousness factor weighs more heavily in its favor.

The PBGC makes an additional argument regarding meritoriousness, that "absent truly extraordinary circumstances, no meritorious statutory claim of the federal government should be dismissed without prior warning."  Brief for Appellants at 42. It points to Fed. R. Civ. P. 55(e), which bars default judgments against the United States "unless the claimant establishes a claim or right to relief by evidence satisfactory to the court", and the doctrine that the government is not subject to the defense of laches, see, e.g., United States v. Gera, 409 F.2d 117, 120 (3d Cir. 1969).

We cannot agree.  As Pabst points out, the reference to Rule 55(e) proves too much.  Rule 55 governs default judgments, and specifically excuses the government from its application under certain circumstances. By contrast, Rule 41(b) specifies no exceptions for the government.  It is hard to avoid the implication that there is, then, no such exception to Rule 41(b).

Furthermore, this court and others have found Rule 41(b) applicable to government agencies in the past.  For example, in Livera v First Nat'l State Bank, 879 F.2d 1186, 1193–94 (3d Cir.), cert. denied, 493 U.S. 937 (1989), we remanded a 41(b) dismissal of a claim by the Small Business Administration to the district court because the court had not applied the Poulis factors, and instructed the district court to determine whether dismissal was appropriate.  Id. at 1196; see also, e.g., Securities & Exchange Comm'n v. Power Resources Corp., 495 F.2d 297, 298 (10th Cir. 1974) (affirming district court dismissal under Rule 41(b) of S.E.C. action for failure to prosecute).

sum of the six Poulis factors weighs against dismissal with prejudice, so that dismissal did not constitute the sound exercise of discretion. In a close case, "doubts should be resolved in favor of reaching a decision on the merits." Scarborough, 747 F.2d at 878. While we agree with the able and experienced district judge that the PBGC bears personal responsibility for the delay in prosecution, and also that there was a history of dilatoriness, these are outweighed by the absence of significant prejudice to the adversary and lack of willfulness or bad faith on the part of the PBGC, by the availability of alternative sanctions, and by the meritoriousness of the PBGC's claim.[0] We share the frustration of the district court at the PBGC's irresponsible conduct, and acknowledge the court's thoughtful consideration of the many factors relevant to the issue of dismissal. However, "[d]ismissal must be a sanction of last, not first, resort," Poulis, 747 F.2d at 869, and in this case lesser sanctions should be applied.

We will vacate the order of the district court and remand for reinstatement of the PBGC's claims and for the imposition of sanctions other than dismissal as appropriate.

_____

[0] We have previously overturned a default judgment against a defendant on the same three grounds. In Gross v. Stereo Component Sys., Inc., 700 F.2d 120 (3d Cir. 1983), we vacated the judgment "[b]ecause no prejudice accrued to the plaintiff, a potentially meritorious defense was available to the defendant, and defendant's conduct in failing to timely answer was not willful." Donnelly is also similar to the instant case: after finding neither willfulness by the attorney, prejudice to the adversary, nor personal responsibility on the part of the client with regard to the tardiness in finding local counsel, we ordered reinstatement of the case and consideration of lesser sanctions. Donnelly, 677 F.2d at 344.

33

Each side to bear its own costs.